IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

MICHAEL WILKINSON     PLAINTIFF

v.     Civil No. 12-5235

CAROLYN W. COLVIN[1], Commissioner
Social Security Administration     DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS

Plaintiff, Michael Wilkinson, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I. Procedural Background:**

Plaintiff filed his DIB and SSI applications on October 13, 2009, alleging an amended onset date of June 30, 2010, due to the skin disease hidradenitis suppurativa ("HS")[2]. Tr. 10, 29-30, 118-128, 177, 186. The Commissioner denied Plaintiff's applications initially and on

---

[1] Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

[2] HS is a chronic disease of the sweat glands, in which pores become occluded, causing tender and inflamed abscesses that enlarge, break through the skin, and yield purulent drainage. *Lewis-Leavy v. Barnhart*, 109 F. App'x 815, 816 n.2 (8th Cir. 2004). These open wounds heal very slowly, if at all. Mayo Foundation for Medical Education and Research, *Hidradenitis Suppurativa*, http://www.mayoclinic.org/diseases-conditions/hidradenitis-suppurativa/basics/definition/con-20027334 (last accessed February 12, 2014). Hidradenitis suppurtiva commonly occurs around hair follicles, such as in the armpits, groin, and anal area. *Id*. It may also occur in areas where skin rubs together, such as the inner thighs, under the breasts or between the buttocks. *Id*.

reconsideration. Tr. 53-56, 59-65, 68-71. An administrative hearing was held on March 31, 2011. Tr. 26-52. Plaintiff was present and represented by counsel.

At the time of the hearing, Plaintiff was 37 years old and possessed an tenth grade education. Tr. 32, 155, 178. He had past relevant work (PRW) experience as a computer support contractor, janitor, and tile laborer in construction.

On April 20, 2011, the ALJ found Plaintiff's history of HS and anxiety to be severe, but concluded they did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 14-15. After partially discrediting Plaintiff's subjective complaints, the ALJ determined that he retained the residual functional capacity ("RFC") to

> perform a full range of work at all exertion levels but with the following nonexertional limitations: the claimant is limited to simple unskilled work under routine supervision. He is able to relate with supervisors and co-workers for work-related purposes. He should avoid contact with the general public.

Tr. 15. With the assistance of a vocational expert, the ALJ concluded Plaintiff could perform his PRW as a tile installer as this position was actually and is generally performed. Tr. 18-19. He also determined Plaintiff would perform work as a packing machine operator, sewing machine operator, industrial cleaner, deboner/eviscerator, production line assembler, small production assembler, small production machine operator, and small production inspector. Tr. 19-20.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on August 30, 2012. Tr. 1-6. Subsequently, Plaintiff filed this action. ECF No. 1. Both parties have filed appeal briefs, and the case is now ready for decision. ECF Nos. 20, 22. The Plaintiff has also filed a Motion for Summary Judgment, to which the Government has replied.

AO72A
(Rev. 8/82)

ECF. No. 23, 26. For the sake of efficiency, both the appeal and the motion will be addressed in this report and recommendation.

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and are repeated here only to the extent necessary.

**II.     Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that has lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A),

1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)-(f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.  Discussion:

The Plaintiff in this case has filed both a Motion for Summary Judgment and an appeal brief. Accordingly, both will be addressed in this opinion.

#### A.  Motion for Summary Judgment:

The standard for summary judgment is well settled. In determining whether summary judgment should issue, the Court must view the facts and inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,

475 U.S. 574, 587 (1986); *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005); *Littrell v. City of Kansas City, Mo.*, 459 F.3d 918, 921 (8th Cir. 2006). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in his pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. FED. R. CIV. P. 56(e); *Anderson*, 477 U.S. at 256; *Littrell,* 459 F.3d at 921. An issue of fact is genuine when "a reasonable jury could return a verdict for the nonmoving party" on the question. *Anderson*, 477 U.S. at 248; *Woods*, 409 F.3d at 990.

      Plaintiff contends that the Government has committed fraud by submitting "incomplete, unsigned, or incorrectly signed evidence riddled with error", misrepresenting the facts used to determine is disability. He complains that the work activity report contained in the record was completed and presented to the court as if he completed it himself or provided the information needed to complete the form. However, Plaintiff denies having played any role in the completion of this document. A review of the documents that do not bear Plaintiff signature reveals that they were completed by agency employees. Tr. 143-151, 184-194, 152-154, 176-197, 208-222. On November 6, 2009, it appears that Bethany Mock, an agency representative, completed a work activity report after speaking to the Plaintiff. Tr. 149-154, 163-164, 185-194. Then, on March 1, 2010, M. Scoggins, another agency employee, completed a disability field office report while interviewing the Plaintiff. Tr . 195-197. It is common practice for interviewers and

5

representatives to complete documents simultaneous to or following a face-to-face or telephone interview with the Plaintiff. *See* Program Operations Manual Systems GN 00201.015.

However, we also note that the Plaintiff himself completed a work history report on November 22, 2009, pain reports on November 22, 2009 and March 22, 2010, and function reports on November 22, 2009, and March 22, 2010, all providing support for the documents completed by the agency employees. Tr. 155-162, 169-175, 198-199, 200-207. Further, Plaintiff testified at the administrative hearing concerning his work history, disabling impairments, and physical and mental limitations. Tr. 31-45. So, while the record does contain an unsigned and undated disability report and two unsigned disability appeal reports, given the other evidence in the record, there is no evidence to indicate that these specific documents were used in determining his case. Tr. 176-183, 208-213, 217-222. And, even if they were, given that the purported facts contained therein are supported by Plaintiff's own statements and reports, reliance on these documents certainly does not constitute fraud.

Plaintiff also contends that the agency committed fraud by failing to include all of his photographic and videographic evidence in the record. However, aside from his bare assertion that additional photographs and video were actually placed into the record, we can find no evidence to indicate that such evidence exists. Therefore, we can not say that Plaintiff has proven the absence of a genuine issue of material fact in this regard. Accordingly, Plaintiff's motion for summary judgment must be denied.

**B.     Appeal:**

Plaintiff raises several issues on appeal. However, of particular concern to the undersigned is the ALJ's treatment of Plaintiff' HS. Skin disorders are covered by listing 8.00,

with listing 8.06 specifically addressing HS. *See* 20 C.F.R. pt. 404, subpt. P, app. 1,§§ 8.00, 8.06. The listing requires "extensive skin lesions involving both axillae, both inguinal areas or the perineum that persist for at least 3 months despite continuing treatment as prescribed." *Id*. Extensive skin lesions are those that involve multiple body sites or critical body areas, and result in a very serious limitation. *Id*. § 8.00 C(1)(c). By definition, ths includes skin lesions that interfere with the motion of the joints or that very seriously limit the movement of one extremity as well as lesions on the perineum and both inguinal areas. *Id*.

Listing 8.00C states that the severity of an individual's condition is to be assessed by considering the extent of the skin lesions, the frequency of the flare-ups of those lesions, how the symptoms (including pain) limit the individual, the extent of the individual's treatment, and how the treatment affects the individual. *Id*. § 8.00C(1-4). Therefore, even if the lesions do not meet the requirements of a listing, frequent flare-ups can result in a finding of medical equivalency. *Id*. § 8.00C(2). The frequency of the flare-ups is also to be accounted for in the RFC assessment. *Id*.

The evidence of record makes clear that Plaintiff has suffered from HS for many years, however, formal diagnosis was not made until 2008 when his lesions were cultured. Initial treatment was for lesions on his jaw line and below his ear. In 2008, the lesions began appearing in his groin and perineal areas. Specifically, from March 2008 until May 2008, Plaintiff was treated for a cyst in the area of his perineum and multiple masses beneath the surface of the skin on the left side of his pelvis. Tr. 237-238, 283. Treatment via antibiotics and hormonal supplements failed, resulting in the necessity for incision and drainage of his perirectal[3] abscess

---

[3] A perirectal abscess is an infection that occurs in the skin near the anus.

on April 2, 2008. Tr. 232, 237, 278, 281-282. On April 17, 2008, two new areas of HS appeared in his groin area. Tr. 253, 275. And, on May 8, 2008, although Dr. Petty noted that the anal wound was "almost completely healed", Plaintiff had an area of induration along his thigh resulting in significant pain. Tr. 252, 274. In July, Plaintiff returned with "boils on his bottom." Tr. 234, 251, 273. Dr. Petty diagnosed him with HS and a another perirectal abscess. Drainage from the abscess and pain were noted to be interfering with his ability to work.

In January 2010, Dr. Gary Nunn conducted a consultative exam, noting Plaintiff's history of HS. Tr. 301-302. Although not currently draining, examination did reveal active ulceration in the groin and genital areas. Oddly, Dr. Nunn was not asked to provide an RFC assessment, so the record does not contain an assessment completed by a treating or examining source.

In May 2011, Dr. Petty treated Plaintiff for an abscess with enlarged lymph nodes under his left ear. Tr. 361. And, in March 2012, Plaintiff was treated for lesions in his armpits and groin. Tr. 362, 36. Dr. Petty noted that Plaintiff had lost his job. He was unable to sit in a chair due to the perineal lesion, suffered from constant abscess drainage, and had to take a bath immediately following bowel movements in order to adequately clean the area. Tr. 362, 363. Sadly, Dr. Petty noted that Plaintiff had "failed more and more treatments for this incurable condition."

In concluding that Plaintiff's impairment did not meet the listing requirements, the ALJ appears to have misstated Dr. Nunn's findings. The ALJ states "[a]ccording to Dr. Nunn, the claimant did show signs of scar tissue from prior disease, but no active disease is noted on the exam at this time." Tr. 14. However, Dr. Nunn's opinion actually reads as follows: "[t]he patient has scar tissue noted in the perineal region. There is no drainage of active ulceration in

8

the groin or genital area at this time." Tr. 302. Clearly, Dr. Nunn is not stating there is no active ulceration. Rather, he is simply stating there is no drainage from said ulceration. And, a review of the listing reveals that active drainage is not required.

The ALJ also failed to consider the extent of Plaintiff's skin lesions, the frequency of his flare-ups, how the symptoms (including pain) limit him, the extent of his treatment, and how the treatment affects him, as is required by listing 8.00C (1-4). And, there appears to have been no consideration given to the location of Plaintiff's lesions and the impact this would have on his ability to sit, stand, walk, and perform other postural activities. Likewise, although the ALJ did conclude Plaintiff could not work near the public, he did not contemplate the impact the location and symptoms of Plaintiff's lesions might have on his ability to work in proximity to co-workers and supervisors. It seems clear to the undersigned that others could be quite offended by Plaintiff's symptoms. The ALJ also failed to consider the additional time that might be required for restroom breaks, given the location of Plaintiff's abscesses and the need to thoroughly clean the affected area after bowel movements. Clearly, this could impact his ability to both obtain and maintain employment. Accordingly, we believe that remand is necessary to allow the ALJ to reevaluate Plaintiff's HS in accordance with the listing.

On remand, the aforementioned issues should be addressed. A physical RFC assessment should also be obtained from Plaintiff's treating doctor, Dr. Petty, so that the record contains medical evidence that addresses his ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

### IV.     Conclusion:

Based on the foregoing, we recommend reversing the decision of the ALJ and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).  **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 13th day of February 2014.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE